HENRY WIGGINS et al. *v.* CLARISSA R. HOWARD et al.

JULIA A. SCHENCK, Appellant, *v.* JAMES F. PIERCE, Referee, Respondent.

(Argued December 14, 1880 ; decided January 18, 1881.)

THE action which is first above entitled was for the partition and sale of certain real estate, situate in Kings county. Judg-

ment was rendered on the 19th day of. May, 1868, and James F. Pierce was thereby appointed referee, to make the sale and report the same to the court, and, if his report should be confirmed, execute deeds to the purchasers, on their complying with the terms of sale. The sale was made July 8, 1868, and produced the sum of $214,610. It was paid, part in money and part in bonds and mortgages. A report made by the referee, in pursuance of the judgment, was confirmed on the 7th of September, 1868, and at the same time the referee was directed to execute conveyances to the several purchasers, and, after paying costs and allowances to the various attorneys, divide the residue of the proceeds among certain parties entitled thereto, and provide for the dower interest and life estate. of Susan Posten, by paying a requisite amount to the treasurer of the county of Kings. The sum necessary for this purpose was estimated at $30,621.61. The interest accruing thereon was for Susan Posten during her life, and at her death the principal was to be paid over to Julia A. Howard.

The complaint made against the referee is that he did not pay to the treasurer $13,780.11, part of the sum of $30,621.61, above referred to, and in November, 1878, a motion was made in behalf of Susan Posten and the said Julia for an order directing the referee to make this payment, and thereafter to file his report, with vouchers and receipts, for all moneys paid by him out of the proceeds of sale in the action. The referee made a report dated December 14, 1878, showing compliance with the judgment of partition and the subsequent order made thereon, and also the payment to the county treasurer by the transfer of certain bonds and mortgages amounting to $16,841.50 and $13,780.11, in a bond and mortgage of Philip S. Crooke and wife. These were for the dower interest and life estate aforesaid, and the controversy relates only to the last item. The real question litigated was whether the Crooke bond and mortgage should be allowed to the referee, or whether he should be required to pay to the moving parties the amount of money represented by it. This report and affidavits on both sides were brought before the court upon the hearing of the motion above referred to, and on the 3d of June, 1879, the matter embraced by such motion, report and

affidavits were sent to referee Heaton, to take testimony in respect to the facts in issue, "so that the court may ascertain the truth in respect thereto," and for that purpose the referee was required to report the testimony so taken, with his opinion. This was done. As a conclusion from the testimony, the referee was of opinion that the beneficiaries, Susan and Julia, had the right to repudiate the Crooke mortgage, and that referee Pierce should pay to the county treasurer the sum represented thereby, with interest, and that the bond and mortgage be assigned and delivered up to him. Pierce excepted to this report in various particulars; and in March, 1880, the whole proceedings, including the testimony taken before the referee, his report, the exceptions thereto, and the original affidavits, were brought before the court, at Special Term, by a motion in behalf of Susan and Julia, for confirmation of the report of referee Heaton, and for an order directing Mr. Pierce to pay over the sum of $13,780.11, with interest as stated in Mr. Heaton's report. The Special Term denied the motion, refused to confirm the report of referee Heaton, and directed that the report of referee Pierce stand as filed. Susan and Julia appealed to the General Term, where the action of the Special Term was approved and its order affirmed. From the order there made this appeal was brought. It appears from the petition on which the motion was founded, that Susan and Julia appeared in the partition suit, by Mr. Clement as their attorney, but Mr. Philip S. Crooke was, as was stated in their behalf, "their actual attorney and counsel," and both of these gentlemen attended to closing the sale and collecting the moneys and mortgages for the referee. On the 25th of November, 1873, there were in Mr. Crooke's hands, products of the sale, money, $13,780.11 and bonds and mortgages, amounting to $16,841.50. He deposited those with the county treasurer, and at the same time delivered to the treasurer his own (Mr. Crooke's) bond and mortgage for $13,780.11, for the purpose mentioned in the receipt then given to him by the county treasurer, in these words: (Title of the cause.) "Brooklyn, November 28th, 1873. Received pursuant to decree herein, dated May 19, 1868, from James F.

Pierce, Esq., as the life estate of said Susan Posten, and her dower right, to be invested for the benefit of Susan Posten ; the interests or dividends therein, or to accrue thereon, to be paid over to her during her natural life, the following bonds and mortgages, amounting to $30,621.61 ; " then follows an enumeration of various small mortgages, amounting to $16,841.50, and after that this statement : " $13,780.11, balance invested in bond and mortgage of Philip S. Crooke and wife." Signed Thos. A. Gardiner, county treasurer. There was no evidence to show, and no allegation, that these instruments were not at that time good security for the amount named. Prior to 1873, Julia had intermarried with Abraham V. Schenck, and on the 24th of November, an agreement was entered into between Mrs. Susan Posten of the first, Mrs. Julia A. Schenck (formerly Julia A. Howard), of the second, and Abraham V. Schenck of the third part, by which after referring to the partition suit, and the fund above referred to as in the hands of the county treasurer, the parties agree that the judgment in partition shall be modified, and Susan and Julia " transfer to Abraham the said fund of $30,621.61, in trust, to invest, collect and reinvest, and pay over the interest to Susan during her life, and after her death to Julia, her heirs, representatives, or assigns." And Abraham accepted the same. Subsequently a petition was presented to the Supreme Court by Mr. Schenck, in which he recited substantially the facts stated in the agreement and asked for " an order directing the county treasurer of Kings county to assign " to him, " trustee as aforesaid, the said bonds and mortgages." A reference was ordered to take proof of the facts stated in the petition, and the referee reported, finding the facts in respect to the partition suit, and the interest of Susan and Julia therein, as above-stated ; the intermarriage of Julia with Abraham V. Schenck ; that the fund " now amounts to $30,691.61, and is now invested in securities in the hands of the county treasurer," and the agreement above stated. Accompanying this report was, among other things, a copy of the judgment in partition ; the certificate of the deputy county treasurer, describing the fund in his hands, substantially as in the receipt of the treas-urer, giving in detail the names of the mortgagors, the amount

of each mortgage, and among others, Philip S. Crooke, $13,780.11. Upon this report the prayer of the petitioner was granted, and the county treasurer was ordered to assign the bonds and mortgages, describing them, to the trustee; on the 5th of December, 1873, they were delivered to him, and he gave a receipt therefor, describing each one. In June, 1875, the trustee had the title to the lands described in the Crooke mortgage examined by his counsel, Mr. Baker, and in September, 1876, he extended the time of its payment for two years. On the 18th of March, 1878, Mr. Schenck resigned his position as trustee, and transferred the trust estate to Julia A. Schenck, his wife (formerly Julia A. Howard), and she was appointed trustee in his stead. Since the assignment by the county treasurer December 5, 1873, Mr. Schenck, and afterward Mrs. Schenck have collected interest on the bond, as the referee finds, " up to and since these proceedings were commenced," November 18, 1878. *Held*, that the motion was properly denied.

The court say : " There seems to have been no default in payment, no inadequacy of security, and no reason for this attempt to charge the referee, except his omission to obey the letter of the judgment. If he had paid the money to the county treasurer, it would have been his duty to invest it upon bond and mortgage. It is claimed by the respondent that by the arrangement between Mr. Crooke and the county treasurer, the bond and mortgage was regarded by the latter as such an investment, but whether it was or not, there is nothing in the case to impute bad faith to the referee in this transaction. He might have deposited with the treasurer mortgages taken for sixty or seventy-five per cent of the purchase-price of lands sold, and whether he paid the money, or transferred mortgages, it does not appear that the condition of the appellants would have been better, nor does it appear that they have been prejudiced by the course taken by the referee. The purpose of the decree was to set apart a fund, not merely as a deposit, but to be invested, so that an income should accrue during Mrs. Posten's life, and so that at her death the principal should be secure for Julia. This was accomplished, and the

complaint and ground of this application is that it was not done in the precise mode indicated by the original judgment. That mode, however, was for the benefit of the parties to this proceeding. The change made seems to have had their approbation, and the sanction of the court. It cannot now be rejected, and a strict compliance with the decree insisted upon.

The appellants have had at all times legal and independent advice; they have had every opportunity of knowing all the facts connected with the transaction involved in this inquiry; they have by their trustee required the interposition of the court to modify the original judgment, for their benefit, enjoyed for many years, and are still receiving, for aught that appears, the interest upon the security, and for their own interest, or the accommodation of Mr. Crooke, postponed payment of the principal sum. No good cause is shown why they should, against the will of the referee, repudiate the investment, and impose it upon him."

*Morris & Pearsall* for appellants.

*Edgar M. Cullen* for respondents.

DANFORTH, J., reads for affirmance.
All concur.
Order affirmed.